UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 11-10504-TSH |
| KEVIN J. LENIHAN, MICHAEL G. COONAN, Individually, and as officers, directors, shareholders, and/or principals of COONAN CAFÉ, INC. d/b/a LEITRIM PUB, | ) ) ) ) ) | |
| and | ) ) | |
| COONAN CAFÉ, INC. d/b/a LEITRIM PUB, 265 Park Avenue, Worcester, MA  01609 | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
August 21, 2012

**HILLMAN, D.J.**

This case involves allegations of cable television signal piracy.  Plaintiff, Joe Hand Promotions, Inc., filed the instant suit on March 24, 2011, against Kevin J. Lenihan, et al., seeking damages for violation of federal broadcasting statutes and conversion (Docket No. 1). Plaintiff claims Defendants unlawfully exhibited an Ultimate Fighting Championship telecast at Leitrim's Pub on its large-screen televisions.  Defendants failed to appear or otherwise defend and default entered on December 22, 2011 against defendants Michael G. Coonan and Coonan

Café, Inc. d/b/a Leitrim Pub.[1]  Plaintiff seeks a default judgment in the amount of $66,865.00 for damages, attorney's fees, and costs (Docket No. 10).

For the reasons set forth below, the motion to enter a default judgment is **GRANTED**, but Plaintiff's award is limited to $4,100.00 for damages, costs, and fees.

## FACTS[2]

Joe Hand Promotions, Inc. ("Hand") is a programming distributor who owned the commercial distribution rights in and to the nationwide telecast of *UFC 111: St.-Pierre v. Hardy* (the "Program"). *Complaint*, ¶ 16. The Program contained several televised under-card bouts and color commentary, along with the main event prizefight. *Hand Aff.*, ¶ 7. The Program originated via satellite uplink, and was subsequently retransmitted to cable systems and satellite companies via satellite signal. *Id.* For a fee, commercial establishments could purchase the right to show the Program. *Id.*, ¶17.

On March 27, 2010, Defendants deliberately, willfully, and illegally displayed one undercard fight of the Program at Leitrim's Pub for financial gain. *Complaint*, ¶ 19. Defendants intercepted Plaintiff's signal and/or used a device to intercept the Program.[3]  *Id.* Plaintiff's agent observed both a cable box and satellite dish at the pub. *Coraine Aff.* Although the pub has an approximate capacity of 100 persons, only eighteen (18) patrons were present when the five (5)

---

[1]  Plaintiff voluntarily dismissed Defendant Kevin J. Lenihan on August 13, 2012 (Docket No. 12).

[2]  Defendants in default are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002), *quoting Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n. 3 (1st Cir. 1999). Defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878 at *3 (S.C.Ala. 2011) (*citing Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007). The allegations must state a cause of action and the court must find "that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id*.

[3]  Plaintiff identifies a litany of methods possibly employed by Defendants to intercept the signal: *e.g.*, the use of a "blackbox" installed on a cable TV line, the use of a "smartcard" installed on a satellite receiver line, the use of an illegal cable drop from an apartment or home next to the business, *etc. Hand Aff.*, ¶ 9. Without conducting discovery, Plaintiff cannot state with certainty how Defendants intercepted the Program.

wide-screen television sets displayed the one undercard fight. *Id*. Defendants did not broadcast the prizefight between St.-Pierre and Hardy or any other undercard bouts. *Id*. No cover was charged at the door. *Id*. Hand would have charged a $1,100 sublicense fee to Defendants, if they had legally licensed the broadcast. *Hand Aff.*, ¶8.

## DISCUSSION

Plaintiff's Complaint states three (3) causes of action, *to wit*: Count I for violations of The Communications Act of 1934, 47 U.S.C. § 605 (hereafter "§ 605"); Count II for violations of The Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553(a)(1) (hereafter "§ 553"); and, Count III for conversion.

### Applicability of Sections 553 and 605

Sections 553 and 605 protect companies such as Plaintiff from the theft of proprietary communications like the Program in this action. *See International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996). Both statutes address similar injuries, so recovery can be had under one or the other, but not both. *J&J Sports Prods., Inc. v. Mendoza-Govan*, 2011 WL 1544886 at *7 (N.D. Cal. Apr. 25, 2011); *J&J Sports Prods., Inc. v. Manzano*, 2008 WL 4542962 at *2 (N.D. Cal. Sept. 29, 2008) ("One cannot violate both with a single act of interception."). Plaintiff seeks to persuade the Court to grant recovery under § 605, presumably because it allows for a greater potential recovery. Further, § 605, mandates that a defendant pay costs and attorney's fees; such an award is discretionary under § 553.

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Plaintiff has pleaded sufficient facts to subject Defendants to § 553.

Section 605 provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit . . . ." 47 U.S.C. § 605(a). Because Plaintiff has alleged Defendants illegally intercepted a radio or satellite transmission, Plaintiff has also pleaded sufficient facts to subject Defendants to § 605.

Given the default, Plaintiff cannot conduct discovery to determine the mode of transmission, so all that is known is that transmission could have happened via satellite or cable. Ultimately, it matters not, because I am awarding damages that (1) fall below the maximum allowed by § 553, but are above the minimum required by § 605; and, (2) include an award of attorney's fees that are discretionary under § 553 and mandatory under § 605.

**Computation of Damages**

Compensatory Damages

The maximum amount that a plaintiff can recover under § 553(3)(A)(ii) is $10,000.00 for all the violations outlined in the complaint, not for each violation. *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 178 (1st Cir. 2006). Section 605 provides for a minimum award of $1,000.00 and a maximum award of $10,000.00 for each violation of section 605(a). 47 U.S.C. § 605(e)(3)(D)(i)(II). Not surprisingly, Plaintiff seeks the maximum $10,000.00 in statutory damages for Defendants' single broadcast, coupled with an enhanced damage award of $20,000.00 pursuant to § 605(e)(3)(C)(ii).

The First Circuit has adopted the approach that statutory damages should be calculated solely as an estimate of actual damages, without additional deterrence consideration. *Burdulis*, 460 F.3d at 181 (citing *Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43 (D. Mass. 2004)).

4

I find Plaintiff is entitled to $1,100.00 in actual damages -- the amount Plaintiff would have received had Defendants paid the sublicensing fee. Following First Circuit precedent, I find that Plaintiff's request for maximum statutory damages as a deterrent is not warranted. Any additional award for deterrence is to be assessed under enhanced damages.

Enhanced Damages

Plaintiff also seeks enhanced damages for a "willful" violation made for direct or indirect commercial advantage. § 605(e)(3)(C)(ii). There is no doubt that Defendants' conduct was willful. *Time Warner Cable of New York City v. Googies Luncheonete, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (noting that "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *Time Warner Cable of New York v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997) (the court "may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based in allegations of willful conduct.").

Plaintiff has not submitted evidence of Defendants' increased revenue from broadcasting the Program, but Plaintiff has shown Defendants gained an indirect commercial advantage by displaying the Program without paying the $1,100.00 licensing fee. I therefore find that Plaintiff is entitled to enhanced damages from Defendants' conduct, § 605(e)(3)(C)(ii), but other factors mitigate a significant enhancement. There is no allegation that Defendants repeatedly violated the broadcast statute. Moreover, Defendants did not charge a cover fee to watch the Program; did not advertise the event; had only eighteen (18) patrons; and, did not broadcast the main event.

I find that enhanced damages of $1,000.00 would best compensate Plaintiff. Such an award balances Plaintiff's estimated damages against Defendants' likely commercial gain in

selling food and drink to roughly eighteen (18) patrons, and the need to deter future theft of service. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (recognizing goal of deterrence and noting that court may consider party's attitude in determining statutory damage award).

Attorney's Fees and Costs

Plaintiff also seeks attorney's fees and costs under § 553 (discretionary) and § 605 (mandatory). In calculating reasonable attorney's fees, the First Circuit uses the lodestar approach which uses the hours reasonably expended multiplied by a reasonable hourly rate. *See Charter Commc'ns Entm't I, LLC v. Burdulis*, 367 F. Supp. 2d 16, 32 (D. Mass. 2005).

Although Plaintiff seeks more than $3,000.00 in attorney's fees, I find that this lawsuit is essentially identical to multiple other recent lawsuits in this and other district courts, requiring little more than four hours of attorney time, so I limit Plaintiff's attorney's fees to $1,000.00.

**Conversion**

Plaintiff also seeks damages for conversion. The facts support such a claim. *See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993) (setting forth the elements of a conversion claim in Massachusetts); *see also John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 186 F. Supp. 2d 1, 28 (D. Mass. 2002) (noting viability of a conversion claim where the subject was intangible property in a cable theft case). Plaintiff owned the exclusive rights to sublicense the broadcast of the Program when Defendants willfully exercised control over it without authorization causing damage to Plaintiff.

Whether Plaintiff's conversion claim is preempted by federal law requires consideration. Both §§ 553 and 605 acknowledge that states may regulate broadcasts with their laws consistent with federal law. The Federal Copyright Act has been held to preempt a conversion claim.

6

*Quincy Cablesystems, Inc. v. Sully's Bar*, 650 F. Supp. 838, 848 (D. Mass. 1986). There, the plaintiff held a copyright to the displayed programming, while here, Plaintiff makes no such claim. The Copyright Act is inapplicable here. Insofar as this Court knows of no applicable federal law precluding Plaintiff's conversion claim, and because the statutes leave room for state law claims regarding broadcast violations, Plaintiff's conversion claim stands.

Regardless, Plaintiff is not entitled to additional damages. The injury sustained under the federal statutes and for the state law conversion claim is the same. Another damage award would be overcompensation. *See Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991) and cases cited. I therefore award Plaintiff no damages for its conversion claim.

## CONCLUSION

For the foregoing reasons, I award Plaintiff, Joe Hand Promotions, Inc., the following damages against Defendants, Michael G. Coonan, Individually, and as officers, directors, shareholders, and/or principals of Coonan Café, Inc. d/b/a Leitrim Pub:

1. Compensatory damages in the amount of $1,100.00;
2. Enhanced damages for a "willful" violation in the amount of $1,000.00;
3. Costs in the amount of $1,000.00; and,
4. Attorney's fees in the amount of $1,000.00.

Total damages awarded are $4,100.00. The clerk is directed to enter judgment for Plaintiff in that amount, with prejudgment interest as provided by law on the damages awards.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE